UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TED CAPODILUPO,<br>JOSEPH MASCI,<br>   a/k/a "Beau Masci," and<br>BRIAN FERRIS,<br><br>        Defendants | Criminal No. 22cr10009<br><br>Violation:<br><br>Count One: Conspiracy to Commit Bank Fraud (18 U.S.C. § 1349)<br><br>Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C) and<br>28 U.S.C. § 2461(c)) |

INFORMATION

At all times relevant to this Information:

General Allegations

1. Defendant TED CAPODILUPO was an individual who resided in South Easton, Massachusetts. CAPODILUPO was a loan broker and a principal of MJD Group, LLC, and also did business under the names ABM Financial Group and Asist2finance, all which were loan marketing and referral businesses.

2. Defendant JOSEPH MASCI, also known as "Beau Masci," was an individual who resided in Boston, Massachusetts. MASCI was a loan broker and a principal of MJD Group, and also did business under the names ABM Financial Group and Asist2finance.

3. Defendant BRIAN FERRIS was an individual who resided in Braintree, Massachusetts. FERRIS was a loan officer at a bank headquartered in Springfield, Massachusetts ("the Bank"). In that capacity, FERRIS was responsible for soliciting and processing loan applications.

4. The Bank was a financial institution, the deposits of which were federally insured, within the meaning of Title 18, United States Code, Section 20. The United States Small Business

Administration ("SBA") was an agency of the executive branch of the United States government. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses. As part of this effort, the SBA enabled and provided for loans, guaranteed by the government, through banks, credit unions, and other lenders.

### The Express Loan Program

5.  The SBA administered the Express Loan Program, pursuant to which federally insured financial institutions provided loans to small businesses of up to $350,000 that were guaranteed by the SBA.

6.  In order to apply for loans from the Express Loan Program, applicants were required to fill out a series of forms requesting, among other things, their identity, the name of their business, the ownership of the business, and the business's annual income. Lenders were also required to fill out forms that were submitted to the SBA, including SBA Form 1919, which asked, among other things, if a "packager, broker, accountant, lawyer, etc." had assisted the borrower in preparing the loan application or had referred the applicant to the lender. An additional form, SBA Form 159, required applicants and their brokers to disclose, among other things, the identity of the broker who had assisted with the application or had referred the applicant to the lender, and to specify the fee charged by the broker.

7.  The Bank was a participant in the SBA's Express Loan Program.

### Overview of the Conspiracy

8.  Between approximately 2015 and 2018, CAPODILUPO, MASCI, FERRIS, and others known and unknown to the United States Attorney agreed to defraud the Bank and the SBA

by submitting and causing to be submitted false loan applications and supporting materials to secure loans from the Bank that were guaranteed by the SBA.

9.  As part of the scheme, CAPODILUPO and MASCI submitted dozens of fraudulent loan applications to the Bank on behalf of their customers, and FERRIS facilitated the Bank's issuance of those loans as part of the SBA's Express Loan Program, thereby generating approximately $270,000 in fees for MJD that the defendants concealed from the Bank and the SBA. Many of these loans ultimately defaulted, resulting in substantial losses to the Bank.

## Object and Purposes of the Conspiracy

10. The object of the conspiracy was to commit bank fraud by obtaining loans based on falsified applications and supporting documentation. The principal purposes of the conspiracy were to make money from fees that the conspirators charged borrowers for obtaining the fraudulent loans, and to conceal those fees, and the fraud scheme, from the Bank and the SBA, among others.

## Manner and Means of the Conspiracy

11. Among the manner and means by which CAPODILUPO, MASCI, FERRIS, and others known and unknown to the United States Attorney carried out the conspiracy and the scheme to defraud were the following:

   a. Working with clients of CAPODILUPO and MASCI who wanted to obtain loans but were ineligible for traditional business loans for a variety of reasons, such as insufficient business revenues or bad credit;

b. Preparing and submitting falsified loan applications that misrepresented, among other things, the identity of the real loan recipients and the businesses for which the loans were being sought, and that falsely indicated that no "packager, broker, accountant, lawyer, etc." had assisted the borrowers in preparing the applications or had referred the applicants to the lender.

c. Fabricating federal tax forms and submitting them in support of the fraudulent loan applications;

d. Falsifying applicant signatures on the fraudulent loan applications;

e. Charging clients fees of between approximately $2,500 and $10,000 to obtain loans for them;

f. Arranging for their fees to be paid out of the proceeds of the loans; and

g. Concealing the scheme from the Bank and the SBA, including by hiding that CAPODILUPO and MASCI were arranging the loans and being paid fees for doing so, and were paying a portion of the fees to FERRIS.

Acts in Furtherance of the Conspiracy

12. On or about the dates set forth below, in the District of Massachusetts and elsewhere, CAPODILUPO, MASCI, FERRIS, and others known and unknown to the United States Attorney committed and caused to be committed the following acts in furtherance of the conspiracy and the scheme to defraud:

13. On or about February 9, 2016, FERRIS caused the Bank to issue a $100,000 loan to a company controlled by Client A, as part of the SBA's Express Loan Program.

14. In support of the loan application for Client A's company, CAPODILUPO, MASCI, and FERRIS submitted false financial information about the company to the Bank and the SBA, including a falsified Internal Revenue Service ("IRS") Schedule C, Profit or Loss from Business form, as well as an SBA Form 1919 falsely attesting that no brokers were used in connection with the loan.

15. On or about August 4, 2016, FERRIS caused the Bank to issue a $100,000 loan, pursuant to the SBA's Express Loan Program, to a company purportedly controlled by Client B that, as CAPODILUPO, MASCI, and FERRIS knew, did not actually exist.

16. In support of the loan application for the company purportedly controlled by Client B, CAPODILUPO, MASCI, and FERRIS submitted an SBA Form 1919 falsely attesting that no brokers were used or paid in connection with the loan, and falsified IRS Schedules C for the tax years 2014 and 2015 listing gross income the fake company had purportedly earned. FERRIS also failed to submit an SBA Form 159, as he was required to do, indicating that CAPODILUPO and MASCI had earned fees of $7,500 for arranging the loan.

17. On or about May 4, 2017, FERRIS caused the Bank to issue a $60,000 loan, pursuant to the SBA's Express Loan Program, to a company purportedly controlled by Client C that, as CAPODILUPO, MASCI, and FERRIS knew, did not actually exist.

18. In support of the loan application for the company purportedly controlled by Client C, CAPODILUPO, MASCI, and FERRIS submitted an SBA Form 1919 falsely representing that

no brokers were used or paid in connection with the loan, and falsified IRS Schedules C for the tax years 2015 and 2016 listing gross income the fake company had purportedly earned.   FERRIS also failed to submit an SBA Form 159, as he was required to do, indicating that CAPODILUPO and MASCI had earned fees of $5,500 for arranging the loan.

19.   On or about May 18, 2017, FERRIS caused the Bank to issue a $50,000 loan, pursuant to the SBA's Express Loan Program, to Client D on behalf of a business that, as CAPODILUPO, MASCI, and FERRIS knew, did not exist.

20.   In support of the loan application for the company purportedly controlled by Client D, CAPODILUPO, MASCI, and FERRIS submitted an SBA Form 1919 falsely representing that no brokers were used or paid in connection with the loan, and FERRIS failed to submit an SBA Form 159, as he was required to do, indicating that CAPODILUPO and MASCI had earned fees of $5,000 for arranging the loan.

21.   FERRIS failed to disclose to the Bank and the SBA that he received a kickback of approximately $500 from CAPODILUPO and MASCI for each of the loans set forth above.

COUNT ONE
Conspiracy to Commit Bank Fraud
(18 U.S.C. § 1349)

The United States Attorney alleges:

22. The United States Attorney re-alleges and incorporates by reference paragraphs 1-21 of this Information.

23. From in or about 2015 through in or about 2018, in the District of Massachusetts and elsewhere, the defendants,

> (1) TED CAPODILUPO,
> (2) JOSEPH MASCI, a/k/a "Beau Masci," and
> (3) BRIAN FERRIS,

conspired with each other, and with others known and unknown to the United States Attorney, to commit bank fraud, that is, to knowingly execute, and attempt to execute, a scheme and artifice to defraud a financial institution, that is, the Bank, and to obtain moneys, funds, credits, assets, securities and other property owned by and under the custody and control of the Bank, by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

All in violation of Title 18, United States Code, Section 1349.

<u>FORFEITURE ALLEGATION</u>
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The United States Attorney further alleges:

24. Upon conviction of the offense in violation of Title 18, United States Code, Section 1349, set forth in Count One, the defendants,

> (1) TED CAPODILUPO,
> (2) JOSEPH MASCI, a/k/a "Beau Masci," and
> (3) BRIAN FERRIS,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, the following assets:

  a. $135,000, to be entered in the form of a forfeiture money judgment against CAPODILUPO;

  b. $135,000 to be entered in the form of a forfeiture money judgment against MASCI; and

  c. $15,000 to be entered in the form of a forfeiture money judgment against FERRIS.

25. If any of the property described in Paragraph 24, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendants --

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the Court;

      d. has been substantially diminished in value; or

      e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in Paragraph 24 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

          */s/ David Holcomb*
          DAVID HOLCOMB
          SARA MIRON BLOOM
          ASSISTANT UNITED STATES ATTORNEYS
          DISTRICT OF MASSACHUSETTS

Date:   January 11, 2022